United States District Court
Southern District of Texas
**ENTERED**
February 24, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LINKERS PRODUCTS CORP., § § *Plaintiff*, § § v. § § CANARY, LLC, § § *Defendant*. § § CANARY, LLC and CANARY DRILLING SERVICES, LLC, § § *Counterclaimants*, § § v. § § LINKERS PRODUCTS CORP., DEMING M. GU, and XIN GU, § § *Counter-Defendants*. § §_____ § TIGER VALVE COMPANY, LLC, § § *Plaintiff*, § § v. § § CANARY, LLC, § § *Defendant*. § § CANARY, LLC and CANARY DRILLING SERVICES, LLC, § § *Counterclaimants*, § § v. § § TIGER VALVE COMPANY, LLC, DEMING M. GU, and XIN GU, § § *Counter-Defendants*. §_____ § | CIVIL ACTION No. 4:16-cv-706 (Consolidated with No. 4:16-cv-707) |

1

## **REPORT AND RECOMMENDATION**

United States District Judge Kenneth M. Hoyt referred this consolidated case to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636. (*Linkers* ECF No. 27.) Linkers Products Corp. ("Linkers") and Tiger Valve Company, LLC ("Tiger Valve") (collectively, "Counter-Defendants") move to dismiss Canary, LLC ("Canary") and Canary Drilling Services, LLC's ("CDS") (collectively, "Canary Parties") amended counterclaims. (*Linkers* ECF No. 11; *Tiger Valve* ECF No. 14.) The Court **RECOMMENDS** that the motions to dismiss be **GRANTED in part** and **DENIED in part**.[1]

### I.  BACKGROUND

**A.  Procedural History**

Linkers, a California corporation, and Tiger Valve, a Texas limited liability company, sell parts to companies in the oil and natural gas industry. Canary provides oilfield services across the United States, and CDS is a wholly-owned subsidiary of Canary. In February 2016, Linkers and Tiger Valve filed separate suits in Texas state court against Canary seeking to recover damages based on Canary's alleged failure to pay for parts it ordered from them.

Canary removed the two suits to federal court based on diversity. On April 1, 2016, Canary filed an original answer and counterclaims in both the *Linkers* case and the *Tiger Valve* case. On April 22, Linkers and Tiger Valve filed answers to the counterclaims and two (now-moot) motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Canary and CDS jointly filed their "First Amended Answer and Counterclaims" on May 8 in the *Tiger Valve* case and on May 9 in the *Linkers* case. Among other things, the amended counterclaims added

---

[1] The instant motions call for issuance of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b)(1); *Seneca Nation of Indians v. New York*, No. 93-CV-688A, 1994 WL 688262, at *1 n.1 (W.D.N.Y. Oct. 28, 1994) (treating motion to dismiss counterclaims as a dispositive motion subject to report and recommendation).

Deming Gu (also known as "Michael Gu") and Xin Gu (also known as "James Gu") as Counter-Defendants. Both are California residents. Deming Gu is the chief executive officer and a shareholder of Linkers, as well as a member and Governing Person of Tiger Valve. Xin Gu is a shareholder of Linkers, and a member, Governing Person, Managing Partner, and General Manager of Tiger Valve. On May 20, Linkers and Tiger Valve filed the present motions to dismiss. Judge Hoyt subsequently consolidated the *Linkers* and *Tiger Valve* cases and referred the consolidated case to this Court.

**B. Canary Parties' Counterclaims**

Canary Parties' amended counterclaims allege that they ordered twenty-nine gate valves used in the hydraulic fracturing of oil and gas wells from Linkers and Tiger Valve; that the valves were supposed to function under working pressures of at least 10,000 pounds per square inch of fluid; that Linkers and Tiger Valve expressly warranted that the valves would work at pressures of up to 10,000 pounds per square inch and further represented that the valves could handle working pressures of up to 15,000 pounds per square inch; that when tested and/or used in the field, many of the valves failed under pressures at or below the 10,000 pounds per square inch threshold; that on September 23, 2014, Xin Gu and other representatives of Linkers and Tiger Valve visited Canary Parties' valve repair facility, admitted that some of the valves had a defective design, and offered assistance in making the necessary repairs; that valves nonetheless continued to fail; that Canary Parties lost customers as a result; and that Canary Parties later learned that Linkers and Tiger Valve had previously sold some of the exact same valves to other companies and that the valves had been returned because they were defective. Canary Parties maintain that Linkers and Tiger Valve knowingly sold them defective valves, failed to disclose that other customers had returned at least some of the valves because they were defective, and

3

misrepresented the quality of the valves and their performance for other customers. They also allege that Deming Gu knew defective valves were being sold to Canary Parties, and that Xin Gu falsely told Canary Parties that Linkers and Tiger Valve had not previously received any customer complaints about the valves. (Am. Counterclaims ¶¶ 54–89, *Linkers* ECF No. 8, *Tiger Valve* ECF No. 9.)[2]

Canary Parties seek to recover: (1) against Linkers and Tiger Valve for breach of contract, breach of express and implied warranties, negligence, gross negligence, setoff, and recoupment (*Linkers* Am. Counterclaims ¶¶ 110–42, 171–79; *Tiger Valve* Am. Counterclaims ¶¶ 110–42, 171–79); (2) against Linkers, Tiger Valve, and Xin Gu for common law fraud, fraudulent inducement, and negligent misrepresentation (*Linkers* Am. Counterclaims ¶¶ 143–57, 166–70; *Tiger Valve* Am. Counterclaims ¶¶ 143–57, 166–70); and (3) against Linkers, Tiger Valve, and Deming Gu for fraudulent concealment (*Linkers* Am. Counterclaims ¶¶ 158–65; *Tiger Valve* Am. Counterclaims ¶¶ 158–65.) Canary Parties maintain that Deming Gu and Xin Gu are personally liable for all damages caused by Linkers and Tiger Valve based on a veil-piercing theory (*Linkers* Am. Counterclaims ¶ 93; *Tiger Valve* Am. Counterclaims ¶ 93), and that Linkers and Tiger Valve should be held jointly and severally liable because they were involved in a joint venture and/or joint enterprise, and because they acted as one another's agent (*Linkers* Am. Counterclaims ¶¶ 100–09; *Tiger Valve* Am. Counterclaims ¶¶ 100–09).

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a counterclaim that "fail[s] to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion to dismiss, a [counterclaim] 'does not need detailed factual allegations,' but must provide

---

[2] The amended counterclaims filed in *Linkers* and *Tiger Valve* are nearly identical. For convenience, the Court's citations will reference only the *Linkers* amended counterclaims, unless otherwise indicated.

the [counterclaimant]'s grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the counterclaims must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). Counterclaims must be liberally construed in favor of the counterclaimant, and all well-pleaded facts must be taken as true. *Duke Energy Intern., L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 665 (S.D. Tex. 2010) (Atlas, J.) (citations omitted). Legal conclusions, however, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. In passing on a motion to dismiss, a court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, provided those documents are referenced in the complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007).

### III. ANALYSIS

#### A. CDS Is A Proper Party and Its Counterclaims Are Adequately Stated under Rule 8.

Counter-Defendants move to dismiss CDS's counterclaims on grounds that CDS is not a proper party to this suit, and that, even if CDS is a proper party, it has failed to state its counterclaims with the particularity necessary to give Counter-Defendants fair notice. (*Linkers* Mot. Dismiss 3–4, ECF No. 11; *Tiger Valve* Mot. Dismiss 4–5, ECF No. 14.)

1. **Canary Properly Added CDS as a Party under Rule 15(a)(1)(B).**

Federal Rule of Civil Procedure 15(a)(1)(B) permits "a party" to "amend its pleading once as a matter of course"—that is, without leave of court—so long as "the pleading is one to which a responsive pleading is required" and the amendment is made within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier." Counter-Defendants do not dispute that Canary and CDS filed the amended counterclaims in accordance with Rule 15(a)(1)(B)'s time limitations.[3] Instead, they argue that because they did not sue CDS, CDS was not "a party" within the meaning of Rule 15(a)(1) when the amended counterclaims were filed. Regardless of CDS's party or non-party status at the time, Canary undoubtedly was "a party" when it filed the amended counterclaims, and it is well established that a party may add entirely new parties to an action under Rule 15(a). *Vera v. Bush*, 980 F. Supp. 254, 255 (S.D. Tex. 1997) ("[N]ew plaintiffs may be added to an action under Rule 15(a)." (citation omitted)); 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1474 & n.22 (3d ed. 2016). By filing the amended counterclaims jointly with CDS, Canary properly added CDS as a counterclaimant to this action.

Because the amended counterclaims were properly filed without leave of court under Rule 15(a)(1)(B), there is no merit to Counter-Defendants' assertion that CDS was required to move for intervention under Rule 24. *See McLellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 873 (5th Cir. 1976) (holding that because Rule 15(a) permitted plaintiff's filing of an amended complaint adding new defendants as a matter of course, plaintiff did not need to obtain leave of court to do so under Rule 21), *vacated in part on other grounds*, 545 F.2d 919 (5th Cir. 1977); *Lehrer v. Connelly*, No. 2:11-CV-00735-LDG, 2012 WL 1019164, at *2 (D. Nev. Mar.

---

[3] The amended counterclaims against Tiger Valve and Linkers were filed on May 8 and 9, 2016, respectively. That was within 21 days of April 22, 2016—the date Linkers and Tiger Valve answered the original counterclaims and filed their subsequently-mooted motions to dismiss under Rule 12(b)(6).

23, 2012) (leave of court to add counter-defendants "not required" where amendment was filed pursuant to Rule 15(a)(1)); *Voilas v. Gen. Motors Corp.*, 173 F.R.D. 389, 394 (D.N.J. 1997) ("[A] distinction between a motion to amend as opposed to a motion to intervene is that, joining plaintiffs by amendment requires that the existing plaintiffs support and seek the inclusion of the additional parties, whereas a motion to intervene can be brought irrespective of the particular desires of the existing parties."); *cf. Kennedy v. MI Windows & Doors, Inc.*, No. 2:12-CV-2305-DCN, 2013 WL 4436408, at *3 (D.S.C. Aug. 15, 2013) (refusing to permit addition of new plaintiff via *second* amended complaint); *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (construing *motion to amend* under Rule 15 as a motion for intervention under Rule 24).

  **2. CDS's Counterclaims are Adequately Stated under Rule 8.**

  Counter-Defendants contend that even if CDS is a proper party to this suit, its counterclaims should be dismissed because the allegations, which refer to Canary and CDS in the collective, "fail[] to particularize what CDS is complaining about and thus . . . do[] not provide the required notice." (*Linkers* Mot. Dismiss 4; *Tiger Valve* Mot. Dismiss 4–5.)

  Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Neither Rule 8 nor any other provision of the Federal Rules flatly prohibits pleadings from referring to parties in the collective. *See Thomas v. Luzerne Cnty. Corr. Facility*, 310 F. Supp. 2d 718, 721 (M.D. Pa. 2004) ("[T]he mere fact that an action is brought against several defendants does not necessarily indicate that separate statements . . . [are] required against each individual defendant."); FED. R. CIV. P. 8(d)(1) (mandating "simple,

concise, and direct" allegations and emphasizing that "[n]o technical form is required"). On the contrary, "[f]air notice under Rule 8(a)(2) depends on the type of case." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (internal quotation marks omitted) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)).

In the context of this case, the amended counterclaims provide fair notice to Counter-Defendants. Paragraph 44 of the amended counterclaims expressly states: "As used in all paragraphs following this one, 'Canary' refers collectively to CDS and Canary, LLC." The import of the collective references to Canary and CDS is clear: each is separately asserting the same counterclaims against Counter-Defendants. Counter-Defendants note that Canary and CDS "cannot both sue for the same claims just because they are affiliates" (*Linkers* Mot. Dismiss 4 (citing cases)); however, nothing in the amended counterclaims suggests that CDS is suing solely because it is an affiliate of Canary. On the contrary, read in light of collective reference, the amended counterclaims plainly allege, inter alia, that Canary and CDS both "issued purchase orders for all of the[] gate valves" and paid consideration for them. (*Linkers* Am. Counterclaims ¶ 55.) Taking the well-pleaded factual allegations as true, CDS has stated a claim upon which relief can be granted. Counter-Defendants' remaining arguments—that the amended counterclaims fail to "identify which valves, if any, CDS purchased from Linkers" and that none of the purchase orders attached to the amended counterclaims "show that they were placed by CDS, rather than Canary" (*Linkers* Mot. Dismiss 4)—are not appropriate for resolution on motions to dismiss and must be raised on a motion for summary judgment.

## B. Canary Parties' Veil-Piercing Allegations Should Not Be Dismissed.

Counter-Defendants move to dismiss Canary Parties' counterclaims to the extent they seek to pierce Linkers' corporate veil and Tiger Valve's entity veil. (*Linkers* Mot. Dismiss 4–6;

*Tiger Valve* Mot. Dismiss 5–7.) Because this is a diversity case, the Court must apply Texas choice-of-law rules to determine which state's law governs the veil-piercing analyses. *In re Parkcentral Global Litig.*, No. 3:09-CV-0765-M, 2010 WL 3119403, at *4 & n.32 (N.D. Tex. Aug. 5, 2010) (citing *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 386 n.7 (5th Cir. 2009)). Under the Texas Business Organizations Code, "the laws of a foreign corporation's state or place of incorporation shall apply when determining the liability of a managerial official (i.e., an officer or director of a corporation) or a shareholder, for an obligation, debt, or liability of the corporation." *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 163 (Tex. App.—Waco 2010, no pet.) (citing TEX. BUS ORGS. CODE ANN. § 1.104); *accord Cedillo v. Medrano Campos*, No. DR-14-CV-057-AM-VRG, 2014 WL 12479202, at *5 (W.D. Tex. Dec. 19, 2014), *adopted*, 2015 WL 11438111 (W.D. Tex. Sept. 30, 2015). On the other hand, Texas law governs the veil-piercing analysis of a Texas LLC. *See Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 2592097, at *5 (W.D. Tex. June 10, 2014); *Parkcentral Global Litig.*, 2010 WL 3119403, at *4. Therefore, California law governs the veil-piercing analysis as to Linkers (a California corporation), while Texas law governs the veil-piercing analysis pertaining to Tiger Valve (a Texas LLC).[4]

---

[4] The Court rejects Linkers' argument that it should not apply California law because doing so "could lead to anomalous results since it would require the Court analyze the liability of Linkers and Tiger Valve based on the same theory under completely different legal standards." (*Linkers* Reply Supp. Mot. Dismiss 6 n.7, ECF No. 30.) Courts routinely apply the laws of different states in actions involving multiple business entities. *See Ogbonna*, 2014 WL 2592097, at *5–12 (applying Wyoming law to claims against some entities and Texas law to claims against others); *Parkcentral Global Litig.*, 2010 WL 3119403, at *4 & n.36 (applying Delaware law to claims against one entity and Texas law to claims against others); *In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 510 (Bankr. N.D. Tex. 2009) (applying Delaware law in veil-piercing analysis of Delaware LLCs and limited partnerships, Tennessee law to veil-piercing analysis of Tennessee corporation, and Texas law to veil-piercing analysis of Texas corporation). Linkers cites *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008), for the proposition that Texas law should be applied to veil-piercing claims against foreign business entities, but the Texas Supreme Court specifically stated that no veil-piercing or alter ego theory was at issue in that case. *Id.* at 451 ("Nor does SSP contend that liability should be imposed on Gladstrong USA by disregarding its

**1. The Veil-Piercing Allegations Relating to Linkers Should Not Be Dismissed.**

"Under California law, there is no litmus test to determine when the corporate veil will be pierced; rather the results will depend on the circumstances of the case. There are, nevertheless, two general requirements: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the person no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Harwood v. Int'l Estate Planners*, 33 F. App'x 903, 906 (9th Cir. 2002) (internal quotation marks, brackets, and citation omitted); *accord Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015); *Automotriz del Golfo de Cal. S.A. de C.V. v. Resnick*, 306 P.2d 1 (Cal. 1957).

Linkers argues that Canary Parties have failed to satisfy the second of these requirements because they have "not pled any cognizable inequitable result." (*Linkers* Reply Supp. Mot. Dismiss 6 n.7.)[5] "[F]actors signaling that it would be inequitable to respect separate corporate identities include[] inadequate capitalization, commingling of assets, [or] disregard of corporate formalities." *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006) (internal quotation marks and citation omitted); *accord Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004). The amended counterclaims allege precisely such factors. (*Linkers* Am. Counterclaims ¶ 94.)[6] Contrary to Linkers' assertion, Canary Parties

---

structure as a separate corporation—that is, by piercing the corporate veil or holding it to be the alter ego of Gladstrong Hong Kong.").

[5] Linkers' motion to dismiss relies entirely on Texas law to argue that Canary Parties' veil-piercing allegations against it should be dismissed. Since California law applies, the Court must disregard those arguments.

[6] That paragraph states as follows:

> Canary [i.e., Canary Parties] also alleges that, at all times pertinent hereto, a unity of interest and ownership existed and exists between and among Tiger Valve, Linkers, Michael Gu, and James Gu; Tiger Valve, Linkers, Michael Gu, and James Gu did not and do not maintain separateness or individuality between or among themselves; Tiger Valve,

do not merely allege that inequity would result if they are unable to collect or offset damages. Dismissal on this basis is therefore inappropriate.

### 2. The Veil-Piercing Allegations Relating to Tiger Valve Should Not Be Dismissed.

Counter-Defendants argue that Canary Parties cannot pierce Tiger Valve's veil to impose liability on Linkers because Linkers is not a member of Tiger Valve. (*Tiger Valve* Mot. Dismiss 5–6.)[7] In their response, Canary Parties refer only to Deming Gu and Xin Gu, both of whom are allegedly members of Tiger Valve. (*Tiger Valve* Resp. Opp. Mot. Dismiss 8, ECF No. 21.) The amended counterclaims, moreover, state that "the Court should disregard the corporate and limited liability company forms of Linkers and Tiger Valve and hold *Michael Gu and James Gu* personally liable for all damages caused by Tiger Valve or Linkers." (Am. Counterclaims ¶ 93 (emphasis added).) In light of Canary Parties' response, and because the pleadings themselves do not indicate otherwise, the Court does not read the amended counterclaims as seeking to hold Linkers itself liable under a veil-piercing theory with respect to Tiger Valve.[8] Counter-Defendants' argument for dismissal on this point is therefore moot.

---

    Linkers, Michael Gu, and James Gu failed and fail to maintain the formalities requisite to the status of a corporation or a limited liability company; Tiger Valve, Linkers, Michael Gu, and James Gu commingle their company and personal funds; Linkers was and is undercapitalized and a mere corporate shell which Linkers' and Tiger Valve's owners used and use as a conduit for their personal business, property, and affairs; Linkers was and is the alter ego of Linkers' and Tiger Valve's owners; and, therefore, that there was and is such a unity of interest, ownership, and control between and among Tiger Valve, Linkers, and their owners that adherence to the fiction of the separate existence of Linkers, Tiger Valve, and their owners would permit an abuse of the corporation and limited liability company privilege and sanction and promote injustice, unfairness, and inequity if the Court only permitted Canary to pursue and satisfy its claims herein only against and out of the assets of Linkers, which assets have not been and will not be sufficient to meet Linkers' obligations to Canary.

[7] Tiger Valve states that Linkers is not a "shareholder," but since Tiger Valve is an LLC, the Court construes it to mean "member" instead.

[8] The amended counterclaims do allege that "Tiger Valve was and is the alter ego of Linkers' and Tiger Valve's owners" and that "there was and is such a unity of interest, ownership, and control between and

Counter-Defendants also argue that Canary Parties cannot pierce Tiger Valve's veil to impose liability on Deming Gu and Xin Gu because there is no allegation that fraud was committed for Deming Gu and/or Xin Gu's "direct personal benefit." (*Tiger Valve* Mot. Dismiss 6.) The amended counterclaims allege that Deming Gu and Xin Gu "used Tiger Valve . . . to perpetrate the actual fraud . . . for their direct personal benefit as owners and officers of Tiger Valve . . . who received salaries, dividends, and distributions as a direct result of the ill-gotten gains" and that they "committed this fraud in order to sell additional oilfield equipment to Canary [Parties] for their direct personal benefit." (*Tiger Valve* Am. Counterclaims ¶ 93.) Counter-Defendants assert that the personal benefits so alleged were at most "indirect" because the "'fruits of the fraud' contributed generally to the revenues of the firm and some of those funds may have been paid out to" Deming Gu and Xin Gu. (*Tiger Valve* Mot. Dismiss 6–7.) The Court rejects this argument. Under Texas law, salaries and other benefits may constitute a "direct personal benefit" to an individual for veil-piercing purposes, even if they passed through a business entity beforehand. *See In re Morrison*, 361 B.R. 107, 120 (Bankr. W.D. Tex. 2007) (concluding that majority stockholder and president of corporation received "direct personal benefit" from misrepresenting the company's financial health to obtain a contract for corporation; he knew the contract was necessary to keep the corporation's "doors open" so that he could continue to draw his salary); *Morgan v. Fuller*, No. 07-15-00314-CV, 2016 WL 2766106, at *3 (Tex. App.—Amarillo May 11, 2016, no pet.) (evidence that corporation's president and sole shareholder received *no salary* during time alleged fraud occurred "tend[ed] to

---

among Tiger Valve, Linkers, and their owners" that it would be inequitable to permit recovery only against Tiger Valve's assets. (*Tiger Valve* Am. Counterclaims ¶ 94.) However, there is no statement that liability should therefore be imposed on Linkers, and the express references to imposing liability on Deming Gu and Xin Gu indicate the contrary.

contradict the suggestion that the fraud in question was perpetrated primarily for his direct benefit").

### C. Canary Parties' Joint Enterprise Allegations Should Not Be Dismissed, But Their Joint Venture Allegations Should Be.

Canary Parties allege that Linkers and Tiger Valve entered into a joint enterprise and a joint venture with one another. (*Linkers* Am. Counterclaims ¶¶ 101–12.) Counter-Defendants argue that the joint enterprise allegations should be dismissed based on the Texas Supreme Court's rejection of the "single business enterprise" theory of joint liability in *SSP Partners*. (*Linkers* Mot. Dismiss 6–7; *Tiger Valve* Mot. Dismiss 7.) However, liability under a joint venture and/or joint enterprise theory was not at issue in *SSP Partners*, and the court specifically stated that those theories are "not to be confused with [a] single business enterprise" theory. 275 S.W.3d at 451–52 (noting that the single business enterprise theory "does not entail the level of agreement required" for liability under the other doctrines). As such, *SSP Partners* does not require dismissal of Canary Parties' joint enterprise allegations.

Next, Counter-Defendants contend that the joint venture allegations should be dismissed because "Canary [Parties] make[] no allegation that Tiger Valve and Linkers agreed to share profits and losses, a necessary element of a joint venture." (*Linkers* Mot. Dismiss 6–7.) There is merit to this argument. "Sharing in profits and losses is an essential element of a joint venture." *Blackburn v. Columbia Med. Ctr.*, 58 S.W.3d 263, 273 (Tex. App.—Fort Worth 2001, pet. denied); *accord Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978) ("an agreement to share profits" is an "essential element" to a joint venture). While Canary Parties allege that Linkers and Tiger Valve shared "a community of pecuniary interest in the sale of oilfield equipment" (*Linkers* Am. Counterclaims ¶ 101), they do not allege that they shared profits and/or losses. *See Blackburn*, 58 S.W.3d at 273–74 (holding that the sharing of profits

and losses is not synonymous with the existence of a "community of pecuniary interest"). Dismissal of the joint venture allegations is thus appropriate.

**D. Canary Parties' Agency Allegations Should Not Be Dismissed.**

Counter-Defendants seek dismissal of Canary Parties' allegation that Linkers and Tiger Valve acted as one another's "agent with apparent and actual authority." (*Linkers* Mot. Dismiss 7; *Tiger Valve* Mot. Dismiss 7; *see also Linkers* Am. Counterclaims ¶ 108.) In their amended counterclaims, Canary Parties specifically state that "in one e-mail, when Canary [Parties] e-mailed Michael Gu about Tiger Valve's stock of oilfield equipment, Michael Gu responded by offering Canary [Parties] oilfield equipment from Linkers." (*Linkers* Am. Counterclaims ¶ 108.) Attached to the amended counterclaims is a copy of an email chain showing that on February 13, 2014, Michael Gu sent an email from e-mail address tigervalve@yahoo.com providing a product quote to a representative of Canary Parties. (Ex. C, *Linkers* Am. Counterclaims.) That email appears to have been written in response to an email Canary Parties sent to email addresses associated with both Linkers and Tiger Valve. (*Id.*) In addition, the amended counterclaims contain specific factual allegations to the effect that Linkers and Tiger Valve sold the same valves to each other's customers. (*Linkers* Am. Counterclaims ¶¶ 74–86.)

Construed in the light most favorable to Canary Parties, these allegations support a plausible inference that Linkers and Tiger Valve acted with at least apparent authority as each another's agents by offering and/or supplying products to customers on one another's behalf. *See Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984) ("Apparent authority in Texas . . . may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the

authority she purports to exercise."); *Thomas Reg'l Directory Co. v. Dragon Prod., Ltd.*, 196 S.W.3d 424, 427–29 (Tex. App.—Beaumont 2006, pet. denied) (explaining doctrine of apparent authority under Texas law). Counter-Defendants assert that the email referenced in the amended counterclaims would, at most, permit an inference that Michael Gu "is an agent of both Tiger Valve and Linkers," but not that Tiger Valve and Linkers were one another's agents. (*Linkers* Mot. Dismiss 7; *Tiger Valve* Mot. Dismiss 7.) The allegations are not limited to that email, however; they include other allegations regarding Linkers' and Tiger Valve's business relationship. Furthermore, business entities necessarily act through individuals; that Michael Gu allegedly held positions with both Linkers and Tiger Valve therefore supports the plausible inference that he performed actions for one entity under the apparent authority of the other.

With respect to the fraud-based counterclaims, Counter-Defendants maintain that the agency allegations should be dismissed for failure to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 805 (S.D. Tex. 2007) (Harmon, J.) ("[Wh]en agency is an element of a fraud claim, agency must be pleaded with particularity required under Rule 9(b)." (internal quotation marks and citations omitted)). The Court disagrees and finds that Canary Parties have satisfied Rule 9(b) because the amended counterclaims lay out "the who, what, when, where, and how" of the agency allegations. *Oakwood Shores Prop. Owners Ass'n, Inc. v. NTP Timber Plus + Fund I, L.P.*, No. 4:15-CV-02313, 2016 WL 4494438, at *3 (S.D. Tex. Aug. 26, 2016) (Hoyt, J.) (internal quotation marks and citations omitted); *see also Whitney Nat'l Bank v. Med. Plaza Surgical Ctr. L.L.P.*, No. H-06-1492, 2007 WL 400094, at *4 (S.D. Tex. Feb. 1, 2007) (Rosenthal, J.) (agency allegations that are merely conclusory do not satisfy Rule 9(b)).

**E. Canary Parties' Negligence-Based Counterclaims Must Be Dismissed under the Economic Loss Rule.**

Counter-Defendants assert that Canary Parties' counterclaims for negligence, gross negligence, and negligent misrepresentation must be dismissed because they are barred by Texas' "economic loss rule." (*Linkers* Mot. Dismiss 7–8; *Tiger Valve* Mot. Dismiss 8.) In response, Canary Parties first argue that California law may apply to these counterclaims, but that the parties have not yet conducted sufficient discovery to permit the Court to conduct an adequate choice-of-law analysis. Next, Canary Parties argue that their counterclaims survive a Rule 12(b)(6) analysis under both California and Texas law. Counter-Defendants reply that a choice-of-law analysis is unnecessary because California's economic loss doctrine also requires dismissal.

Under Texas law, "[t]he economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract." *Worldpak Intern., LLC v. Diablo Valley Packaging, Inc.*, No. 4:08-CV-00469, 2009 WL 1577989, at *2 (E.D. Tex. June 4, 2009), *adopted*, No. 4:08-CV-00469, 2009 WL 1873784 (E.D. Tex. June 30, 2009). "The rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Worldpak Intern.*, 2009 WL 1577989, at *2 (citation omitted). "Thus, in order for a tort duty to arise out of a contractual duty, . . . the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract." *Id.* (internal quotation marks and citation omitted). With one relevant exception (discussed below), California's economic loss rule is the same as Texas'. *Id.* at *2 n.1 ("California treats the economic loss rule in the same manner as Texas.").

Here, Canary Parties' counterclaims for negligence, gross negligence, and negligent misrepresentation all seek recovery for economic losses related to items that were allegedly the subject of contracts with Counter-Defendants. (*See Linkers* Am. Counterclaims ¶¶ 133–42, 166–70.) Accordingly, those counterclaims are barred by the economic loss doctrine under both Texas and California law.

Canary Parties maintain that the negligent misrepresentation counterclaims are not subject to the economic loss rule, citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 & n.14 (Tex. 2011). However, in *Sharyland*, the Texas Supreme Court did not state that negligent misrepresentation claims are totally exempt from the economic loss rule; rather, it cited negligent misrepresentation as one example of "tort claims for which courts have allowed recovery of economic damages *even absent physical injury or property damage*." *Id.* (emphasis added). Other courts have dismissed negligent misrepresentation claims based on the economic loss rule. *See Miller v. Citi Mortgage, Inc.*, 970 F. Supp. 2d 568, 576 (N.D. Tex. 2013) ("Plaintiff's claim for negligent misrepresentation should be dismissed with prejudice because of the economic loss rule. The damages that Plaintiff seeks as a result of the alleged misrepresentations . . . are economic damages that are recoverable under Plaintiff's breach of contract claim.").

Canary Parties also contend that dismissal is unwarranted due to California's "special relationship exception" to the economic loss rule, which provides that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity." *J'Aire Corp. v. Gregory*, 598 P.2d 60, 63 (Cal. 1979). However, Canary Parties point to no factual allegations in their amended counterclaims that, when accepted as true,

17

support application of this exception based on the purported sale of defective valves between Linkers and Tiger Valve.[9] The allegations related to Canary Parties' contract-based counterclaims are insufficient because the special relationship exception applies only to third-party relationships and does not "encompass direct relationships," such as those between contracting parties. *Elsayed v. Maserati N. Am., Inc.*, No. 16-00918-CJC(DFM), 2016 WL 6091109, at *10 (C.D. Cal. Oct. 18, 2016) (noting that courts "would almost *always* find a special relationship between directly-contracting parties" and that "[s]uch a result is directly contrary to the special relationship's status as a *narrow* exception to the economic loss doctrine"). Since Canary Parties' counterclaims for negligence, gross negligence, and negligent misrepresentation must be dismissed under Texas and California law, no choice-of-law analysis is necessary.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Counter-Defendants' motions to dismiss be **GRANTED in part** and **DENIED in part**, as follows:

(1) Canary Parties' joint venture allegations should be dismissed;

(2) Canary Parties' counterclaims for negligence, gross negligence, and negligent misrepresentation should be dismissed; and

(3) Linkers' and Tiger Valve's motions to dismiss should be denied in all other respects.

---

[9] "When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. Plaintiffs cannot enlarge the allegations of their [c]omplaint by arguments made in an opposition to a motion to dismiss." *Bender v. Jordan*, 612 F. Supp. 2d 62, 66 (D.D.C. 2009) (internal quotation marks and citation omitted). With respect to the special relationship exception, the factual allegations and evidence Canary Parties cite are found not in the amended counterclaims, but in the briefing of the motion for reconsideration of Judge Hoyt's consolidation order; they are therefore not properly before the Court on these motions to dismiss. (*See Linkers* Resp. Opp. Mot. Dismiss 15 n.27.)

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72. Failure to file timely objections may preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on February 24, 2017, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**